IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BLUROC, LLC;                                                                                           PLAINTIFF
YAK ACCESS, LLC

v.                                                                    CIVIL ACTION NO. 2:23-cv-163-TBM-RPM

BENJAMIN FOBERG;
JUSTIN LAVOIE;
JOHN DOES 1-15                                                                                       DEFENDANTS

## COMPLAINT

### JURY TRIAL DEMANDED

NOW COME BluRoc, LLC and Yak Access, LLC (collectively herein, "Yak Access" or "Plaintiff") and allege the following against Benjamin Foberg (hereinafter "Foberg"), Justin Lavoie (hereinafter "Lavoie"), and John Does 1-15.

### PARTIES

1. BluRoc, LLC (hereinafter "BluRoc") is a Mississippi limited liability company, authorized to do, and presently doing, business in the State of Mississippi. BluRoc maintains facilities and regularly conducts business within this Court's Eastern Division.

2. Yak Access, LLC is a Mississippi limited liability company, authorized to do, and presently doing, business in the State of Mississippi. Yak Access, LLC maintains facilities and regularly conducts business within this Court's Eastern Division.

3. Foberg is an adult resident citizen of the State of Massachusetts presently residing at 22 Center Road, Gill, Massachusetts.

4. Lavoie is an adult resident citizen of the State of Massachusetts presently residing at 273 Providence Street, Rehoboth, Massachusetts.

5. The John Doe defendants are entities and/or individuals whose identities are unknown to Plaintiff at this time. It is believed that these other entities and/or individuals benefited from, participated in, or contributed in some manner to the acts complained of in this suit. When their identities are known, Yak Access will amend this complaint.

## JURISDICTION

6. This Court has original subject matter jurisdiction of this civil action under 28 U.S.C. § 1332.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. This Court also has original subject matter jurisdiction of this civil action under 28 U.S.C. § 1331.  Some of Yak Access' claims arise under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

8. This Court has in personam jurisdiction over Foberg and Lavoie.

## VENUE

9. Venue is proper in this Court because a substantial part of the events giving rise to Yak Access' claims took place in the Eastern Division of this Court's Southern District.

## SUMMARY OF FACTS

10. Yak Access, LLC and BluRoc are affiliated companies that provide access solutions for customers across the construction and energy industries through the creation of temporary and permanent roads, bridges for crossing, installation of culverts, and provision of other civil services solutions using highly confidential and proprietary processes and products.

11. From on or about February 1, 2022, until October 17, 2023, Lavoie worked for Yak Access. Initially, Lavoie worked as a Project Manager. He was promoted to Director of Construction on or about March 10, 2023.

12. From on or about May 24, 2018, until October 17, 2023, Foberg worked for Yak Access, most recently in the position of Regional Director.

13. Throughout their employment with Yak Access, both Foberg and Lavoie had general management responsibilities for Yak Access' operations and oversaw and managed employees working in various locations across Yak Access' footprint.

14. While employed by Yak Access, both Foberg and Lavoie acquired substantial experience in Yak Access' business, including, without limitation, significant client relationships, sales and marketing, pricing, competitive bidding, vendor relationships and general management. At all relevant times, Foberg and Lavoie occupied positions with Yak Access that required considerable responsibility and trust by Yak Access' management.

15. While employed by Yak Access, Lavoie executed a document confirming that in reliance on his loyalty, and as a condition of his employment, Yak Access would entrust him with highly sensitive, confidential, restricted and proprietary information involving trade secrets and confidential information. In this document, Lavoie acknowledged and agreed to:

    a. safeguard and hold in confidence;

    b. not disclose to any person or entity except as necessary to perform Lavoie's duties for Yak Access; and

    c. not use for any purpose except in connection with performing Lavoie's duties for Yak Access.

*See Employee Confidentiality and Noncompetition Agreement*, attached hereto as Exhibit "A."

16. Likewise, while employed by Yak Access, Foberg agreed and acknowledged his ongoing obligation not to directly or indirectly disclose any confidential business information belonging to Yak Access to which he received access or became aware of as a result of his

employment. Further, Foberg agreed not to directly or indirectly use such confidential information for his benefit or purposes or for the benefit or purposes of any other party.

17. Yak Access did in fact provide Foberg and Lavoie with highly sensitive, confidential, restricted and proprietary information involving trade secrets and confidential information. This information included, without limitation, information concerning the (1) customers, (2) suppliers and contractors, (3) employees (including the methods though which Yak Access identifies, hires, trains, and compensates employees and employee compensation information), (4) products and services (current or planned), (5) costs, (6) pricing, (7) production methods, (8) business methods, (9) research and development efforts, (10) results of operations or financial position, (11) trade secrets, and (12) ownership structure of Yak Access.  This information derives independent value from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use. Further, this information has been the subject of efforts reasonable by Yak Access to maintain its secrecy.

18. Similarly, Lavoie also acknowledged and agreed, during the term of his employment with Yak Access and for a period of two (2) years thereafter, he would not, in any manner, directly, indirectly, individually, in partnership, jointly or in conjunction with any other person or entity,

> a. engage in any business competitive to Yak Access in North America, whether as an owner, manager, employee, partner, officer, director, agent, consultant, investor or otherwise,

  b. acquire or hold an equity or economic interest of any kind in, or provide capital or credit support to, any business competitive to Yak Access in North America, or

  c. otherwise advise, assist, support or render services (of an executive, marketing, manufacturing, research and development, administrative, financial, consulting or other nature) to any business competitive to Yak Access in North America.

*See* Exh. A.

  19. Lavoie also acknowledged and agreed that during the term of his employment with Yak Access and for a period of two (2) years thereafter, he would not, either for Lavoie's own account or as an employee, independent contractor or agent for any other person or entity, directly or indirectly:

  a. solicit, persuade or otherwise induce any

    i. customer of or supplier to any member of Yak Access to reduce or cease doing business with Yak Access, or

    ii. any customer of Yak Access to purchase goods or services provided by Yak Access from some other person or entity,

  b. solicit, persuade or otherwise induce any employee then employed by Yak Access to terminate his or her employment with Yak Access or become employed by any person or entity other than Yak Access, or

  c. hire or offer to hire any person then employed by Yak Access or who was employed by Yak Access within six (6) months prior to the date of hire.

*Id.*

20. Likewise, while employed by Yak Access, Foberg also agreed and acknowledged his ongoing obligation not to call upon, solicit, accept any business of, provide any services or products to, contact or have any communication with, any individual, corporate entity, partnership, or like party who is or was a customer or prospective customer of Yak Access at any time during his employment with Yak Access for the purpose of

    a. diverting or attempting to divert or influence any business of such customer or prospective customer to any other party or

    b. otherwise interfering in any fashion with the operations being conducted by Yak Access.

21. Foberg also agreed and acknowledged his ongoing obligation not to solicit or attempt to solicit directly or indirectly any customer, vendor, supplier, employee, consultant or other person who is a business relation of Yak Access to cease doing business with Yak Access, to deal with any competitor of Yak Access, or in any way interfere with the relationship between any such party and Yak Access for Foberg's own benefit or the benefit of another party.

22. By virtue of their managerial positions, Foberg and Lavoie occupied positions of control over several Yak Access employees.

23. On or about October 12, 2023, at approximately 10:30 a.m. Eastern Time, Foberg and Lavoie notified BluRoc President Jamie Moncur of their intention to resign their respective employment.

24. Upon information and belief, prior to notifying Yak Access of their intent to resign their employment with Yak Access, and unbeknownst to Yak Access, Foberg and Lavoie had undertaken efforts to create a new business entity, Titan Civil, LLC, for the purposes of competing with Yak Access.

25. Specifically, on or about June 16, 2023, Foberg and Lavoie registered LF Group LLC, a Connecticut limited liability company whose only members are Foberg and Lavoie, with the State of Connecticut.

26. Thereafter, on or about July 21, 2023, Titan Civil, LLC, a Connecticut limited liability company whose only members are LF Group LLC and C-TEC Solar, LLC, registered in the State of Connecticut.

27. Titan Civil, LLC is registered with the State of Connecticut as "Site Preparation Contractors" (code 238910) under the North American Industry Classification System (NAICS).

28. On October 16, 2023, while Foberg and Lavoie were still employed with Yak Access, Yak Access discovered that both Foberg and Lavoie had on multiple previous occasions mishandled and misappropriated Yak Access trade secrets and confidential information. For example, Foberg and Lavoie downloaded Yak Access' confidential and proprietary information to unauthorized external storage devices, uploaded information to their personal cloud-storage, and emailed information to their own personal email accounts.

29. Additionally, Yak Access discovered email communications and draft documents clearly indicating that for several months prior to Foberg's and Lavoie's notification to Yak Access of their intent to resign their employment, Foberg and Lavoie used Yak Access devices and resources to establish Titan Civil, LLC. Upon information and belief, Foberg and Lavoie instituted a plan to eliminate or substantially damage Yak Access's ability to conduct business and to serve its customers in the territory and markets that Foberg and Lavoie had managed for Yak Access.

30. Upon information and belief, since at least June 2023, Foberg and Lavoie have been involved in a plan, conspiracy and/or scheme to accomplish the following acts and

omissions: (a) to misappropriate the aforementioned confidential information from Yak Access for the benefit of Titan Civil, LLC, and (b) to cause damage to Yak Access by, inter alia, diverting prospective customers away from Yak Access and encouraging existing customers to work with their new competing entity, Titan Civil, LLC.

31. Some or all of the John Doe defendants participated in this plan, conspiracy and/or scheme, with the intent to harm Yak Access through the misappropriation of the confidential information that Yak Access provided to Foberg and Lavoie by virtue of their positions with Yak Access.

32. While actively working to establish Titan Civil, LLC as a going concern in direct competition with Yak Access: (i) Foberg and Lavoie remained involved in the management and oversight of Yak Access' operations and continued to receive Yak Access' confidential and proprietary information and trade secrets, and (ii) Yak Access entrusted Foberg and Lavoie with its confidential information.

33. Upon discovery of Foberg and Lavoie's actions, Yak Access terminated their employments on October 17, 2023, effective immediately, and demanded the return of all Yak Access property, including any and all confidential and proprietary information and trade secrets, in any form.

34. However, Yak Access has since learned Foberg and Lavoie misappropriated large amounts of additional confidential and proprietary information and trade secrets after the termination of their employments despite their ongoing obligations to Yak Access.

35. As a proximate result of the actions and omissions of Foberg and Lavoie alleged above, Yak Access' ability to conduct business and serve its customers in the territory and markets that Foberg and Lavoie managed for Yak Access has been damaged and will continue to

be damaged for the foreseeable future. Such damages include, but are in no way limited to, consequential and incidental damages, lost revenues, lost profits, diminution of asset value, loss of customer goodwill and other economic losses the extent of which have yet to be fully quantified.

## **CLAIMS**

### COUNT I

*Foberg's and Lavoie's Breach of the Duty of Loyalty and Good Faith*

36. Yak Access incorporates by reference the preceding averments of this Complaint.

37. While employed by Yak Access, Foberg and Lavoie owed a duty of loyalty and good faith to Yak Access.

38. Foberg's and Lavoie's duty of loyalty and good faith included, but was not limited to, the following:

   a. being faithful, honest and loyal to their employer, Yak Access;

   b. acting for the benefit of their employer, Yak Access, and not to injure Yak Access' business or financial interest;

   c. refraining from competing with their employer, Yak Access, while employed by Yak Access;

   d. refraining from using or communicating information confidentially given them by their employer, Yak Access (or acquired by them during the course of, or on account of, their employment with Yak Access) in competition with or to the injury of Yak Access, whether on their own account or on behalf of another;

    e. refraining from the solicitation of Yak Access employees to terminate employment with Yak Access and to accept employment with a competitor;

    f. refraining from self-dealing;

    g. avoiding and disclosing potential or actual conflicts of interests;

    h. refraining from acquiring or diverting corporate business opportunities for their personal benefit;

    i. representing only their employer, Yak Access, and not any adverse party, during their employment with Yak Access; and

    j. refraining from misappropriating, disclosing or soliciting the misappropriation or disclosure of confidential and proprietary information and trade secrets belonging to Yak Access.

39. Foberg's and Lavoie's actions and failures to act as alleged in paragraphs 10 through 35 above constitute breaches of Foberg's and Lavoie's duty of loyalty and good faith to Yak Access.

## COUNT II

*Unfair Competition and Tortious Interference with Actual and Prospective Advantageous Business Relations by Foberg and Lavoie*

40. Yak Access incorporates by reference the preceding averments of this Complaint.

41. As alleged in paragraphs 10 through 35 above, Foberg and Lavoie acted with a malicious or unlawful purpose and to intentionally and wrongfully damage the existing business and future business opportunities of Yak Access.

42. The acts and omissions of Foberg and Lavoie constitute actionable predatory practices and unfair competition.

43. The acts and omissions of Foberg and Lavoie constitute tortious interference with actual and prospective advantageous business relations of Yak Access.

## COUNT III

*Civil Conspiracy by Foberg and Lavoie*

44. Yak Access incorporates by reference the preceding averments of this Complaint.

45. As alleged in Paragraphs 10 through 35 above, Foberg and Lavoie, and perhaps others, discussed the means by which they, jointly and severally, would promote their own personal and corporate interests and thereby damage Yak Access and for other improper purposes.

46. The actions, omissions and combinations of Foberg and Lavoie constitute actionable civil conspiracy.

## COUNT IV

*Misappropriation of Trade Secrets by Foberg and Lavoie*
*Mississippi Uniform Trade Secrets Act*
*Defend Trade Secrets Act*

47. Yak Access incorporates by reference the preceding averments of this Complaint.

48. As alleged in Paragraphs 10 through 35 above, Foberg and Lavoie have misappropriated trade secrets of Yak Access in violation of the Defend Trade Secrets Act of 2016, U.S.C. § 1836 *et seq* and Mississippi Uniform Trade Secrets Act, MISS. CODE ANN. §§ 75-26-1 *et seq*.

## COUNT V

*Breach of Contract by Lavoie*

49. Yak Access incorporates by reference the preceding averments of this Complaint.

50.  As alleged in Paragraphs 10 through 35 above, Lavoie breached his Employee Confidentiality and Noncompetition Agreement.

## PRAYER FOR RELIEF AND AD DAMNUM

51.  Yak Access demands and is entitled to a judgment from and against Foberg and Lavoie, jointly and separately, as follows:

   a.  such actual damages to which Yak Access may prove its entitlement before this Court;

   b.  punitive or exemplary damages in a sum sufficient to punish Foberg and Lavoie for their willful, wanton and wrongful conduct, as well as to make an example of Foberg and Lavoie for the societal purpose of deterrence;

   c.  prejudgment and post-judgment interest;

   d.  reasonable attorneys' fees, expenses and costs;

   e.  declaratory and injunctive relief; and

   f.  such further damages or other relief to which Yak Access may be justly entitled under common law and the statutes alleged for the injuries, losses, abuses and injustices it has suffered.

WHEREFORE, PREMISES CONSIDERED, Yak Access prays that the Court, after trial by jury, will award Yak Access the relief requested. Yak Access further prays for any and all other equitable, general or special relief as may be appropriate and just.

THIS the 27th day of October, 2023.

> BLUROC, LLC and YAK ACCESS, LLC
>
> By: /s/ *Timothy M. Threadgill*
> Timothy M. Threadgill (MB No. 8866)
> Blythe K. Lollar (MB No. 104554)
>
> Attorneys for Plaintiffs

OF COUNSEL:

BUTLER SNOW LLP
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
P.O. Box 6010
Ridgeland, MS 39158-6010
Phone: (601) 948-5711
Fax: (601) 985-4500
Email:  tim.threadgill@butlersnow.com
Email:  blythe.lollar@butlersnow.com
83875838.v4